UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| PANFILA MARTINEZ RAMIREZ, Individually, as Representative of the Estate of ESPERANZA TAVERA RAMIREZ, Deceased, and as Next Friend of G.G. (a Minor); HILARIO MARTINEZ RAMIREZ and ALBERTO MARTINEZ RAMIREZ, | §§§§§§§§ | |
| *Plaintiffs* | § | CIVIL ACTION NO. 17-211 |
| V. | §§§ | **JURY DEMANDED** |
| GENERAL MOTORS, L.L.C. | §§§ | |
| *Defendant* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiffs, Panfila Martinez Ramirez, Individually, as Representative of the Estate of Esperanza Tavera Ramirez (Deceased) and as Next Friend of G.G. (a Minor); Hilario Martinez Ramirez and Alberto Martinez Ramirez, (collectively referred to as Plaintiffs) file this their Original Complaint and Jury Demand against Defendant, General Motors, L.L.C. (sometimes "GM" or "GM LLC") and for cause-of-action respectfully show this Court as follows:

### I. JURISDICTION AND VENUE

1.1     The court has jurisdiction over the lawsuit under 28 U.S.C. §1332 (a)(1) and (2) because the Plaintiffs and the Defendant are citizens of different states/foreign state and the amount in controversy exceeds $75,000, excluding interest and costs.  Plaintiff Panfila Martinez Ramirez is a citizen of the State of Texas.  Defendant GM herein is a citizen of Delaware and Michigan.  The Defendant GM herein does not have its principal place of business in Texas.

1.2     Venue is proper in the United States District Court for the Eastern District of Texas, Lufkin Division, pursuant to 28 U.S.C. §1391 (b)(2).

1.3     Defendant has previously appeared in and defended one or more lawsuits in Texas in the Eastern District containing allegations that a GM vehicle manufactured by GM was defective and caused personal injury or death.

1.4     GM's contacts with the State of Texas, and in the Eastern District are continuous and systematic, such that the court has general personal jurisdiction over GM.

1.5     Vehicles manufactured by GM are routinely sold in Texas through local dealers in Polk County, Texas, counties within the Lufkin Division of the Eastern District of Texas, as well as national dealers doing business in the State of Texas.

1.6     GM purposely markets and sells its vehicles through distributors in Texas.

1.7     Accordingly, GM has purposefully availed themselves of the privileges and benefits of conducting business in Texas.

1.8     GM's alleged liability in this case arises from or is related to the sale, distribution, and/or use of its vehicles in Texas.

1.9     The Court's exercise of personal jurisdiction over GM comports with due process.

1.10    GM is deemed to reside in the Eastern District of Texas pursuant to 28 U.S.C. §1391(c) in that they regularly conduct business within the Lufkin Division of the Eastern District of Texas, and is subject to personal jurisdiction in the Lufkin Division of the Eastern District of Texas.

1.11    This Court has jurisdiction over the parties to this civil action because Defendant GM LLC has purposefully availed itself of the privileges and benefits of conducting business in Texas, to its' own significant financial benefit.

1.12    This Court has specific personal jurisdiction over Defendant GM LLC:

- because GM LLC directly targets marketing to, franchises within, Texas, and sets prices in the Texas market in conjunction with contracts between GM LLC and Texas businesses;

- because Plaintiffs' causes of action arise from GM LLC's activities related to the

manufacture, research, development, design, implementation, testing, in-field monitoring, warranting and warning dissemination in relation to vehicles such as the 2003 Chevrolet C2500 Suburban (VIN#3GNGK26UX3G245829), which was purchased new in Texas as, as well as countless other vehicles purposefully directed and disseminated to the Texas market;

- because GM LLC participated in the design and manufacture of the defectively designed and manufactured vehicle purchased in Texas which failed in a catastrophic manner that resulted in the damages suffered by Plaintiffs as set forth below;

- because the Plaintiffs' causes of action arises from GM LLC's failure to carefully perform the certification and warranting and in-field monitoring and related warning tasks (and GM LLC's failure to carefully perform the related safety duties undertaken by GM LLC in connection with performing these statutory duties) in connection with the failed vehicle at issue as required pursuant to 49 U.S.C. § 30112(a);

- because the Plaintiffs' causes of action arise from GM LLC's activities related to the design of vehicles made with patented technology invented by the employees of GM LLC, and such vehicles include the 2003 Chevrolet C2500 Suburban (VIN#3GNGK26UX3G245829) purchased new in Texas as well as countless other vehicles directed into the Texas market;

- because the Plaintiffs' causes of action in this case are based, in part, on GM LLC issuing and disseminating instructions and warnings in Texas regarding the maintenance of GM vehicles under circumstances such that GM LLC knew or should have known that this task was necessary for the protection of Texas customers, such as and including the Plaintiff;

- because several years prior to the new sale of the subject vehicle, GM LLC

disseminated Technical Bulletins to Texas retailers;

- because GM LLC undertook the duty to disseminate Technical Bulletins in Texas and was negligent in its performance of this task undertaken in Texas;

- because GM LLC created Technical Bulletins;

- because GM LLC disseminated Technical Bulletins to service providers in Texas;

- because GM LLC intended the Technical Bulletins to be considered by vehicle service providers, including those in Texas, when they were advising customers, including those in Texas, about servicing their GM LLC vehicle;

- because the Plaintiffs' causes of action in this case are based, in part, on GM LLC negligently carrying out the undertaken duty (to issue and disseminate instructions and warnings) performed in Texas and in connection with dealerships in Texas;

- because the Plaintiffs' causes of action in this case are based, in part, on the fact that GM LLC placed the vehicle at issue, which GM LLC designed, into the "stream of commerce" with the expectation that it would be "used by consumers in the forum state" as those phrases are used and intended in *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013);

- because GM LLC is aware that the stream of commerce will sweep its vehicles into Texas, and facilitated and intended said result;

- because beyond placing the GM LLC vehicle at issue into the stream of commerce, GM LLC has also engaged in additional conduct that indicates an intent to serve the market in Texas;

- because GM LLC's additional conduct indicating an intent to serve the market in Texas during the period from January of 2002 through October of 2017 includes advertising in Texas through national advertising that has intentionally pervaded into Texas, and through specific marketing efforts particularly

targeted at Texas, including advertising focused on events in Texas;

- because, during the period from January of 2002 through October of 2017, GM LLC spent millions of dollars marketing GM LLC vehicles in Texas, including both Texas-specific promotions and national marketing that pervades into Texas;

- because, during the period from January of 2002 through October of 2017, GM LLC has routinely performed in-field service and monitoring of vehicles (including performing warranting, recalling, and technical service) in Texas on vehicles initially purchased in other states;

- because, during the period from January of 2002 through October of 2017, GM LLC trained personnel at GM LLC vehicle dealerships in Texas in vehicle workmanship and materials standards applicable to 2003 Chevrolet C2500 Suburbans;

- because, during the period from January of 2002 through October of 2017, GM LLC has participated in aspects of its product warranty and adjustment process applicable to 2003 Chevrolet C2500 Suburbans from within Texas;

- because, during the period from January of 2002 through October of 2017, GM LLC sent technical service bulletins applicable to 2003 Chevrolet C2500 Suburbans into Texas; GM LLC directed customers to approved GM LLC dealerships in Texas to have service bulletin work performed on GM vehicles regardless of which various states where vehicles were initially sold where the vehicles were located in Texas at the time of the service bulletin work;

- because, during the period from January of 2002 through October of 2017, GM LLC gathered data about its vehicles' performance in Texas and used that data in the redesign of its products;

- because, during the period from January of 2002 through October of 2017,

GM LLC has held patents and trademarks which it demands must be honored and enforced in Texas;

- because GM LLC's additional conduct indicating an intent to serve the market in Texas during the period from January of 2002 through October of 2017 includes establishing channels for providing regular advice to customers in Texas;

- because, during the period from January of 2002 through October of 2017, GM LLC has employed dozens of Texas residents, and GM LLC has recruited dozens of Texas residents for employment in Texas and beyond Texas;

- because GM LLC has had Area Sales Managers assigned to areas including Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had multiple Area Sales Managers assigned to multiple areas that have included different locations within Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had Regional Sales Managers assigned to regions including Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had multiple Regional Sales Managers assigned to multiple regions that have included different locations within Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had Strategic Accounts Managers assigned to accounts in Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had Sales Analysts whose responsibilities included analyzing sales in Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had Retail Sales Representatives whose territories

included Texas at some time between January of 2002 through October of 2017;

- because GM LLC has contracted with hundreds of individuals residing in Texas and businesses in Texas pursuant to contracts to be performed, at least in part, in Texas at some time between January of 2002 through October of 2017;

- because GM LLC's additional conduct indicating an intent to serve the market in Texas includes marketing vehicle in Texas through a network of Texas distributors who serve as GM LLC's sales agents in Texas;

- because GM LLC has had accounts with car dealerships in Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had accounts with municipalities in Texas at some time between January of 2002 through October of 2017;

- because GM LLC has had accounts related to advertising and marketing directed specifically into Texas markets at some time between January of 2002 through October of 2017;

- because GM LLC owns the interactive website at http://www.GM.com (as it did during the time between January of 2002 through October of 2017), holds the copyright associated with the website, and controls the content on the website;

- because the website at http://www.GM.com offers guidance to customers (including customers in Texas) through the following features:

  (a)   selection of GM LLC vehicles offered for sale, including GM LLC vehicles, which are offered for sale in Texas;
  (b)   registration of vehicles with GM LLC;
  (c)   promotions to obtain discounts or rewards for the purchase of GM LLC vehicles; and
  (d)   location of dealerships, including over a hundred dealerships in Texas which customers on the website can be directed to for purchasing GM LLC vehicles in Texas;

- because the website at http://www.GM.com has a feature offering customers

  (including customers in Texas) the following:

  (a)    "shop cars now" feature finding GM LLC vehicles for sale, including GM
         LLC vehicles for sale in Texas;
  (b)    "search inventory" feature that helps one locate the right authorized GM
         LLC dealerships to get customers MSRP including over 500 GM LLC
         dealerships located in Texas on new and certified pre-owned vehicles;
  (c)    A "warranty tracker" and a "need service?" feature who will help arrange
         your appointment for service of your vehicle including appointments in
         Texas; and
  (d)    A feature on its website that helps its customers schedule an
         appointment with GM dealerships to purchase parts for its GM vehicle
         in Texas.

- because GM LLC owns, holds the copyright to, and controls the content of the

  website at http://www.GM.com (as it did during the time between January of

  2002 through October of 2017), which has specifically promoted events in

  Texas, including the 2017 National Truck Tour which took place in San Antonio,

  Texas on April 20-30;

- because GM LLC North America, Inc. owns, holds the copyright to, and controls

  the content of the interactive website at http://www.GM.com/ (as it did during

  the time between January of 2002 through October of 2017), which offers

  guidance to customers (including customers in Texas) in the selection of GM

  LLC vehicles in Texas and in obtaining assistance locating authorized GM LLC

  dealerships including over 100 authorized GM LLC dealerships;

- because in 2017, General LLC announced its plans to open a supplier park

  near its Arlington, Texas, sport-utility factory, resulting in the relocation of about

  600 jobs from Mexico to the U.S.;

- because GM LLC has entered into numerous Authorized Retail Agreements

  during the period from January of 2002 through October of 2017 with

  persons or business entities located in Texas;

- because GM LLC has entered into numerous GM LLC Dealer Agreements

during the period from January of 2002 through October of 2017 with persons or business entities located in Texas;

- because since 1954, GM LLC owns and operates an assembly plant located in 2525 E. Abram, Arlington, Texas with over 4,125 employees;

- because GM LLC designed the failed vehicle at issue;

- because GM LLC has contacts with Texas such that GM LLC has purposefully availed itself of the benefits and privileges of doing business in Texas;

- because GM LLC does business in Texas and has purposefully availed itself of the rights associated with doing business in Texas;

- because, during the period from January of 2002 through October of 2017, GM LLC has been as a party in hundreds of civil actions in state and federal courts in Texas where the suits have asserted that the failure of a GM LLC vehicle caused injury, death, or other damage;

- because, during the period from January of 2002 through October of 2017, GM LLC has on dozens of occasions honored contractual and common law duties to defend and indemnify retail sellers of GM LLC vehicles in Texas courts when the dealerships were sued in Texas courts;

- because, during the period from January of 2002 through October of 2017, GM LLC has been involved in sufficient litigation in Texas involving GM LLC vehicles which have been associated with crashes in Texas such that GM LLC can anticipate being haled into court in Texas based on crashes which occurred in Texas;

- because, during the period from January of 2002 through October of 2017, GM LLC has directly or indirectly sold thousands of vehicles in Texas generated hundreds of millions of dollars in sales in Texas;

- because, during the period from January of 2002 through October of 2017,

GM LLC made efforts to serve, directly and indirectly, the market for vehicles in Texas and the 49 other states;

- because, during the period from January of 2002 through October of 2017, GM LLC's sale and shipment of GM LLC's vehicles has been a voluntary interstate activity conducted for profit by GM LLC;

- because GM LLC has contacts with Texas such that GM LLC reasonably anticipates being haled into Court in Texas;

- because this Court's exercise of jurisdiction over GM LLC does not violate GM LLC's constitutional rights under the Due Process Clause;

- because this Court's exercise of jurisdiction over GM LLC does not violate the traditional notions of fair play and substantial justice;

- because the Texas standard for exercising specific personal jurisdiction in a product liability case where the nonresident defendant's product was sold into Texas indirectly through an independent seller is set forth in *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 [Tex. 2010], and was more recently discussed in *TV Azteca v. Ruiz*, 490 S.W.3d 29, 46, 54 [Tex. 2016], and in *Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, 08-14-00172-CV, 2016 WL 1367421, at *10–12 [Tex. App.—El Paso Apr. 6, 2016, no pet.]; and

- because the Texas standard for exercising specific personal jurisdiction in a non-product-liability tort case where the nonresident defendant's disputed conduct extended into Texas is set forth in *TV Azteca v. Ruiz*, 490 S.W.3d 29, 46, 54 [Tex. 2016], and *Cornerstone Healthcare Group Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 [Tex. 2016], *cert. dismissed sub nom, Nautic Mgmt. VI, LP v. Cornerstone Healthcare Grp. Holding, Inc.*, 137 S. Ct. 615, 196 L. Ed. 2d 492 (2016).

-

## II.  PARTIES

2.1     Plaintiff is Panfila Martinez Ramirez, Individually, as Representative of the Estate of Esperanza Tavera Ramirez (Deceased) and as Next Friend of G.G. (a Minor).  Plaintiff Panfila Martinez Ramirez brings suit herein individually and for the wrongful death of her mother and father under the Texas Wrongful Death Act and as Representative of the Estate of Esperanza Tavera Ramirez under the Texas Survival Act.  Plaintiff Panfila Martinez Ramirez also brings suit for the personal injuries of her minor child, G.G.  Plaintiff Panfila Martinez Ramirez is a resident of Goodrich, Texas.

2.2     Plaintiff Hilario Martinez Ramirez brings suit herein for the wrongful death of his mother, Esperanza Tavera Ramirez, under the Texas Wrongful Death Act.  Plaintiff is a resident of Columbus, Mississippi.

2.3     Plaintiff Alberto Martinez Ramirez brings suit herein for the wrongful death of his mother, Esperanza Tavera Ramirez, under the Texas Wrongful Death Act as well as his personal injuries.  Plaintiff Alberto Martinez Ramirez is a resident of Columbus, Mississippi.

2.4     Defendant General Motors, LLC, is a Delaware corporation and headquartered in Michigan.  GM is engaged in and doing business in the State of Texas.  GM can be served with process through its registered agent, Corporation Service Company D/B/A CSC-Lawyers Inc., by personal service at: 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III.  FACTS

3.1     On or about October 1, 2017, Alberto Martinez Ramirez was driving a 2003 Chevrolet C2500 Suburban (VIN#3GNGK26UX3G245829) north on US 59 in Polk County with other passengers, including Esperanza Tavera Ramirez and minor child G.G.

3.2     Based upon the police report, the vehicle entered a side skid crossing over the inside lanes of US 59 and into the median and rolled over coming to rest on its roof.

3.3     Esperanza Tavera Ramirez was properly wearing her seat belt.  G.G., a minor child, was properly wearing his seatbelt.

3.4    At all relevant times, Defendant GM was in the business of designing, developing, manufacturing, marketing, and selling automobiles and their components and did in fact design, develop, manufacture, market, sell and place into the stream of commerce the subject Chevrolet Suburban and its components that failed in this accident.  Defendant GM designed, manufactured and installed the defective roof that was unreasonably dangerous to consumers, including Plaintiffs.  The roof installed in the 2003 Chevrolet C2500 Suburban was defective and unreasonably dangerous in that such roof was not designed and manufactured to withstand the forces exerted during a foreseeable rollover and therefore intruded into the occupant containment space and did nothing to assist in the crashworthiness of the 2003 Chevrolet Suburban.  Additionally, Defendant GM designed, manufactured and installed an occupant restraint system that was defective in that it failed to incorporate laminated glass and adequate and reasonable belt system to prevent serious injuries and wrongful death of Esperanza Tavera Ramirez.

3.5    The subject Chevrolet C2500 Suburban crashworthiness was a producing and proximate cause of the wrongful death of Esperanza Tavera Ramirez, injuries and damages suffered by Esperanza Tavera Ramirez, Deceased, G.G., a minor, and Plaintiffs.

## IV. CAUSE OF ACTION
## STRICT PRODUCT LIABILITY AGAINST GM

4.1    At all times material hereto, Defendant General Motors, L.L.C. was in the business of designing, manufacturing and marketing automobiles, including Chevrolet C2500 Suburban vehicles such as the one driven by Alberto Martinez Ramirez.  Defendant General Motors, L.L.C. is thus the manufacturer and seller of the subject Chevrolet C2500 Suburban and is liable under the doctrine of strict product liability in tort for injuries produced by defects in the subject Chevrolet C2500 Suburban, including, but not limited to a weak roof, ineffective restraints and lack of laminated side window glass.

4.2    The Chevrolet C2500 Suburban that caused injuries, suffering and death to Esperanza Tavera Ramirez, Deceased, the injuries to Alberto Martinez Ramirez, the injuries to G.G. (a minor child), and the subsequent damages and loss to the Plaintiffs, was defectively

designed, manufactured and marketed by GM and was unreasonably dangerous, defective, and otherwise unsafe for its intended purpose at the time it left the control of GM and at the time it was sold.  Such defects were a producing and proximate cause of the accident and injuries to and consequent wrongful death of Esperanza Tavera Ramirez, Deceased, the injuries to Alberto Martinez Ramirez, the injuries to G.G. (a minor child), and of all of the Plaintiffs' injuries and damages.

4.3    Moreover, safer alternative designs existed at the time the product was manufactured.  The safer alternative designs, without substantially impairing the product's utility, would have prevented or significantly reduced the risk of the accident and the wrongful death of Esperanza Tavera Ramirez, Deceased, the injuries to Alberto Martinez Ramirez, the injuries to G.G. (a minor child), and of all of the Plaintiffs' injuries and damages.  Furthermore, the safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendant GM by the application of existing and reasonably achievable scientific knowledge.  Such safer alternative designs include a stronger roof design, enhanced restraints, seat integrated restraint systems, laminated side window glass, etc.

4.4    Specifically, prior to the design of the subject Chevrolet C2500 Suburban, GM had designed, manufactured and marketed vehicles with a stronger roof design, enhanced restraints and seat integrated restraint systems.

4.5    Specifically, prior to the design of the subject Chevrolet C2500 Suburban, GM had designed, manufactured and marketed vehicles with laminated side window glass.

4.6    At the time of the accident, the vehicle and its components were in substantially the same condition as it was at the time it left control of the Defendant GM.

4.7    Plaintiffs more specifically plead their claim of design defects regarding the 2003 Chevrolet C2500 Suburban's handling, stability, rollover resistance, defective restraint system, defective roof integrity and crashworthiness.

4.8    Plaintiffs more specifically plead their claim of marketing defect regarding the 2003 Chevrolet C2500 Suburban because General Motors, L.L.C. failed to properly warn of

known defects in the Chevrolet C2500 Suburban regarding the handling, stability, rollover resistance, defective restraint system, defective roof integrity, and crash worthiness. Moreover, GM marketed the 2003 Chevrolet C2500 Suburban as a safe vehicle and failed to warn of known dangers by GM.

4.9     Applicable safety standards issued by the Federal Government or any other agency or group, if any, were inadequate to protect the public from unreasonable risks of injury or damage and GM has withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations set at issue in this action.

## V. NEGLIGENCE OF DEFENDANT GM

5.1     GM committed unreasonable acts of omission and commission, which, collectively and severally, constitute negligence.  Such negligence was a proximate cause of the accident and injuries to and consequent wrongful death of Esperanza Tavera Ramirez, Deceased, the injuries to Alberto Martinez Ramirez, the injuries to G.G. (a minor child), and of all of the Plaintiffs' injuries and damages.  Such negligence includes, but is not limited to: failing to properly design the C2500 Suburban under the doctrine of crashworthiness and rollover protection and the failure to incorporate a stronger roof design, the failure to incorporate an enhanced restraint system, the failure to incorporate an integrated seat restraint, the failure to incorporate laminated side window glass and others.  Furthermore, GM failed in its duty to warn its consumers of such risks.

## VI. COMPENSATORY DAMAGES

6.1     As a producing, direct and proximate result of the incident, injuries, and damages for which Defendant is liable, the Plaintiffs seek and are entitled to general, special, economic and noneconomic, wrongful death and survival damages, as applicable to the Plaintiffs, in an amount in excess of the minimum jurisdictional limits of the court, as determined to be just and fair by the jury.  Such damages include, but are not necessarily limited to:

a.    *Wrongful Death Damages*

(1)    pecuniary loss in the past and future;

(2)    loss of consortium, companionship and society in the past and future;

(3)    mental anguish in the past and future;

(4)    loss of inheritance;

(5)    loss of community estate and addition to estate; and

(6)    all other damages allowed by law and equity.

b.    *Survival Damages – Estate of Esperanza Tavera Ramirez, Deceased*

(1)    pain and mental anguish;

(2)    medical expenses;

(3)    funeral and burial expenses; and

(4)    all other damages allowed by law and equity.

c.    *Damages of G.G., a minor*

(1)    pain and mental anguish in the past and future;

(2)    disfigurement in the past and future;

(3)    physical impairment in the past and future;

(4)    medical expenses in the past and future; and

(5)    all other damages allowed by law and equity.

c.    *Damages of Alberto Martinez Ramirez*

(1)    pain and mental anguish in the past and future;

(2)    disfigurement in the past and future;

(3)    physical impairment in the past and future;

(4)    medical expenses in the past and future; and

(5)    all other damages allowed by law and equity.

d.    *Bystander Damages*

6.2    The damages sought are greatly in excess of the minimum jurisdictional limits of the United States District Court.

## VII. PRE-JUDGMENT AND POST-JUDGMENT INTEREST

7.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## VIII.  JURY DEMAND

8.1    Plaintiffs respectfully request a trial by jury.

## PRAYER

WHEREFORE, Plaintiffs pray that this cause be set for trial before a jury, and that Plaintiffs recover judgment of and from Defendants for actual and exemplary damages in such amount as the evidence may show and the jury may determine to be proper, together with prejudgment interest, post-judgment interest, reasonable attorneys' fees, costs of court, and such other and further relief to which they may show themselves to be justly entitled.

Respectfully Submitted,

By:    */s/ Jason P. Hoelscher*
Jason P. Hoelscher
**(Designated Lead Counsel)**
State Bar No. 24010671
Federal ID No. 38772
teamhoelscher@shhblaw.com
Bianca Calderón de Lachica
State Bar No. 24090022
Federal ID No. 2338505
teamcalderondelachica@shhblaw.com
**SICO HOELSCHER HARRIS & BRAUGH LLP**
900 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78401
Telephone: (361) 653-3300
Facsimile:  (361) 653-3333

By:    */s/ Gregory L. Gowan*
Gregory L. Gowan
State Bar No. 00795384
Federal ID No. 19991
ggowan@gelawfirm.com
**GOWAN ELIZONDO, L.L.P.**
555 N. Carancahua Street, Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 651-1000
Facsimile:  (361) 651-1001

**ATTORNEYS FOR PLAINTIFFS**